| | | |
|---|---|---|
| DEMPSEY "JOE" HARSHAW, III, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No.: |
| | ) | |
| NAS NALLE AUTOMATION SYSTEMS, LLC, | ) | JURY DEMANDED |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now Dempsey "Joe" Harshaw, III, by and through counsel, and sues Defendant NAS Nalle Automation Systems ("Nalle"), as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      This case arises under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq*.

2.      Plaintiff is an adult citizen and resident of Knoxville, Knox County, Tennessee.

3.      Upon information and belief, Defendant is a Delaware limited liability company or a domestic limited liability company.  It operates a facility in Knoxville, Tennessee, at which Mr. Harshaw was employed.

4.      The Court has subject matter jurisdiction pursuant to, *inter alia*, 29 U.S.C. § 2617, 42 U.S.C. § 2000e-2, and 28  U.S.C. § 1331.

5.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

6.      Defendant employs more than fifty (50) workers at its Knoxville, Tennessee, facility and is a covered employer under Title VII and the FMLA.

7.      Mr. Harshaw timely filed a charge of discrimination with the Equal Employment

Opportunity Commission based on the same general conduct set forth herein. He was unrepresented by counsel while the EEOC investigated his charge, and he does not possess – or have independent recollection of – the documents prepared by that agency for his signature. However, he received a Notice of Rights on August 19, 2020, and timely files this suit within the prescribed period.

## FACTUAL BASIS

8. Mr. Harshaw began working at Defendant's facility through a temporary employment agency in 2018 and soon transitioned to become a permanent employee. His job position was mechanical assembler.

9. Mr. Harshaw maintained a good relationship with his supervisors and coworkers, with one notable exception. His immediate supervisor, James Deering, frequently directed racist jokes, comments, and innuendo to Mr. Harshaw. He intentionally played and sang along with songs containing racist lyrics; referred to Harshaw as "nigger" on multiple occasions; assumed Harshaw has been to jail because "all black people have been to jail;" and assigned him the nickname "black licorice nigger gummy bear."

10. On numerous other occasions he sabotaged Mr. Harshaw's work by, for example, loosening all the bolts on a machine Harshaw had assembled to make it look as if Harshaw had not installed them correctly. Deering would immediately report the "problem" to the facility's general manager, Tommy Payne.

11. Mr. Harshaw reported Deering's actions to Payne on several occasions throughout his employment. Payne refused to take any action to prevent or curtail Deering's racist behavior.

12. Beyond the near-constant racist behavior of Deering, Mr. Harshaw also has suffered many years with a painful dental disease and resulting symptomology. At the time he

was becoming a permanent employee in approximately September 2018, he notified Defendant of his dental disease and requested as a reasonable accommodation that he be allowed a period of unpaid leave to undergo corrective surgeries.

13.	Defendant agreed, so in December 2018 and January 2019, Mr. Harshaw underwent significant oral surgeries to correct these problems.  The surgeries involved the removal of 27 teeth, installing pins and other metal devices into this jaws and gums, and implanting dentures into his mouth.

14.	The surgeries, including pre- and post-op appointments, rendered Mr. Harshaw temporarily unable to work for approximately three weeks in late 2018 and early 2019.  Not only did he notify Defendant of his expected return-to-work date, he returned several days earlier than originally anticipated.

15.	Unfortunately, in October 2019, Mr. Harshaw's wife was diagnosed with a cystic condition which required multiple rounds of medical testing and referrals to medical specialists. As soon as he discovered the reality of her condition and required treatments, Mr. Harshaw requested what he referred to as "family leave" for the days he would be required to care for his wife.  The facility's manager, Payne, responded, "I don't know anything about that."

16.	Whenever Mr. Harshaw returned to work after an absence, Deering would have taken some action to harass Mr. Harshaw.  For example, Deering wrapped Harshaw's large toolbox in shrink wrap and placed it by the exit door to make Harshaw believe he was being terminated.  On another occasion, he used a key to enter Harshaw's toolbox, damaged his expensive personal tools, and left them sitting on top of the toolbox where they were subject to theft or further damage.  Defendant did not provide these tools, so Mr. Harshaw had to borrow other people's tools due to Deering's having damaged Harshaw's.

3

17. Defendant again refused to take any action to correct, prohibit, or prevent Deering's constant harassment, which Deering did not direct to any Caucasian employees.

18. By December 2019 Mr. Harshaw had missed the equivalent of approximately three weeks' of work attributable to his wife's condition, but those required absences had tapered substantially.

19. On or about December 11, 2019, Mr. Harshaw was leaving for work when he noticed he had a flat tire. He immediately contacted Defendant to advise he would be late reporting to work. He arrived later that morning and worked the remainder of his shift.

20. The following day, Defendant called him into the office and fired him, citing his recent absences. The absences, however, were related to his wife's serious medical conditions for which he requested and was qualified – but was refused – FMLA leave. To the extent Defendant held against him the unpaid leave Harshaw requested as a reasonable accommodation in late 2018/early 2019, such action would mean Defendant retroactively revoked the reasonable accommodation for his own disability.

### CAUSES OF ACTION

### Title VII of the Civil Rights Act:  Race Discrimination

21. Deering, as Defendant's authorized agent, directed multiple, highly offensive statements and actions to Mr. Harshaw based on Mr. Harshaw's race.

22. Mr. Harshaw reported this behavior to the general manager, Payne, on several occasions, yet Defendant took no action to prevent or eliminate Deering's severe, pervasive, and gross harassment of Mr. Harshaw.

23. Mr. Harshaw was the only African-American Defendant employed at its Knoxville facility, and no Caucasian employee was required to work under Deering's racially based actions.

4

24.     Defendant gave Deering free reign to spew his racial comments, damage Harshaw's personal tools, and denigrate Harshaw in front of his peers, each of which was due to Mr. Harshaw's race and materially altered the terms and conditions of Harshaw's employment.

**Family & Medical Leave Act:  Interference**

25.     Defendant is a covered entity as defined by the FMLA.  By October 2019, Mr. Harshaw had satisfied the length of service and hours requirement established by the FMLA, thereby making him eligible for FMLA benefits related to his wife's serious medical conditions for which he was required to provide substantial care and support.

26.     In discussing with his wife's doctors in October 2019 her medical condition and the anticipated level of care he would have to provide, Mr. Harshaw was advised to request "family leave" from his employer, which he subsequently did to the facility's general manager, Tommy Payne.

27.     Payne, however, responded, "I don't know anything about that."

28.     Defendant did not notify Mr. Harshaw of any obligations or requirements that Defendant or the FMLA imposed upon him or of the rights and benefits the FMLA guaranteed him.

29.     Even though Defendant never made Mr. Harshaw aware of anything regarding the FMLA, Defendant did not act at the time to discipline or penalize Harshaw for his absences.

30.     However, upon Harshaw's flat tire and resulting tardiness in December 2019, Defendant immediately fired him, citing "attendance problems."

31.     Similar to nearly every other employee, Harshaw had missed work on occasion due to non-FMLA-qualifying events, such as a routine illness or appointment, but he utilized accumulated vacation days for these absences.

32. Moreover, Defendant never objected to Harshaw's infrequent absences, nor had he received any type of disciplinary action. Thus, the "attendance problems" Defendant relied upon to fire Harshaw were the more sustained absences caused by his wife's serious medical condition.

33. Defendant was well aware of Mr. Harshaw's attempted exercise of his FMLA rights; he explicitly requested "family leave" when explaining his wife's conditions.

34. Defendant's failure to provide Harshaw the legally required notice of his FMLA rights, and its decision to fire him based on absences caused by his wife's serious medical conditions and Harshaw's associated caregiving responsibilities, violated the FMLA.

35. Defendant's top management admittedly "[didn't] know anything about" the company's legal duty to provide FMLA protection for its eligible employees yet took zero action to ensure compliance. This and Defendant's other (in)actions with respect to Harshaw's FMLA rights demonstrate Defendant's willful, egregious, and reckless disregard of his FMLA rights.

## HARMS AND LOSSES

36. As a direct and proximate result of Defendant's willful violations Title VII and the FMLA, Mr. Harshaw has and will continue to suffer a loss of income, loss of employment benefits, loss of job opportunities, loss of contributions to retirement and public welfare benefits (such as Social Security and Medicare), loss of enjoyment of life, increased medical expenses, loss of enjoyment of life, and mental anguish, all for which Defendant is liable to Mr. Harshaw by operation of law.

6

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff Dempsey J. Harshaw, III, respectfully prays for the following relief:

37. A judgment that Defendant interfered with and violated his rights under the FMLA and that such violations were willful;

38. A judgment that Defendant violated Title VII of the Civil Rights Act of 1964 and that such violations were reckless and intentional.

39. That all factual issues be decided by a jury;

40. An award of lost wages, lost employment benefits, related economic damages, and liquidated damages pursuant to the FMLA.

41. All compensatory and non-pecuniary damages, as well as punitive damages, under Title VII;

42. Prospective relief consisting of reinstatement with applicable adjustments to salary and seniority, a permanent injunction prohibiting Defendant from engaging in further prohibited behavior against Mr. Harshaw, restoring his eligibility for FMLA, and requiring Defendant to provide additional training regarding the laws implicated in this suit;

43. Additional or in the alternative to certain prospective relief, front pay;

44. Pre- and post-judgment interest;

45. Attorneys' fees, expert witness fees, and all discretionary costs; and

46. All further relief, both legal and equitable, as allowed by the laws and facts at issue in this case.

RESPECTFULLY SUBMITTED,

_s/ Jesse D. Nelson_
JESSE D. NELSON (BPR # 025602)
ALEX J. CRAMER (BPR # 037697)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com
alex@NLGattorneys.com

*Attorneys for Dempsey "Joe" Harshaw, III*